Philip F. FIORE et al.

v.

Edward LYNCH, in his capacity as Pension Administrator for the City of Providence et al.

No. 93–318–Appeal.

Supreme Court of Rhode Island.

Feb. 23, 1994.

Joseph Rodio and Charles D. Mills (Rodio & Ursillo), Providence, for plaintiff.

Richard Skolnik, Providence, Richard Riendeau, Pawtucket, and Charles Mansolillo (City Solicitor), Providence, for defendant.

## OPINION

PER CURIAM.

The plaintiffs, a group of former Providence firefighters who are receiving disability pensions, appealed the denial by the Superior Court of their motion to quash subpoenas for their medical records. The subpoenas were issued by a committee of the Providence City Council (council) to the Providence Retirement Board of the Employees' Retirement System (board). The plaintiffs had refused to release their medical records to said committee.

This controversy arose when the council, pursuant to a resolution approved on September 11, 1992, established a Standing Committee (committee) on the Employee Retirement System whose five council members were authorized *inter alia* "to conduct investigations of any and all acts and conduct of the Employee Retirement Board, and the Employee Retirement System in accordance with Section 402 of the Providence Home Rule Charter." City Council Res. 428 (Providence, Sept. 11, 1992). A subsequent council resolution, approved January 29, 1993, granted the committee subpoena power "to compel the attendance of witnesses * * * and to compel the production of books, papers and other evidence in connection with said Committee's investigation of the granting of disability pensions by the Employee Retirement Board." City Council Res. 52 (Providence, Jan. 29, 1993).

On center stage in this controversy among plaintiffs, the board, and the council are the rights and the responsibilities of the parties as set forth in the Confidentiality of Health Care Information Act (the act). G.L.1956 (1987 Reenactment) chapter 37.3 of title 5. "The general thrust of the act is aimed at prohibiting third-parties from engaging in the solicitation and procurement of confidential health care information from health care providers without a patient's consent." *Trembley v. City of Central Falls*, 480 A.2d 1359, 1363 (R.I.1984).

After denying plaintiffs' motion to quash subpoenas to the board for the medical records of the then most recent retirees from all city departments who had been retired on disability pensions by the board, the trial justice ordered that the records be delivered to the committee in redacted form. The board complied with the order following this court's denial of plaintiffs' motion to stay that order, and the board then filed a counterstatement as an intervenor in support of

plaintiffs' position in this action. The council cross-appealed the order, arguing that the "sanitized" records prevented ·it from fully carrying out its study.

In ordering the board to comply with the council's subpoena for the medical records, the Superior Court justice directed that "the names and other information identifying individuals shall be removed pursuant to Rhode Island General Law 5–37.3–4(b)(3)," which provides one of the exemptions to the requirement of confidentiality. The exception states that "[n]o consent for release or transfer of confidential health care information is required * * * [t]o qualified personnel for the purpose of conducting * * * management audits * * * program · evaluations * * * or similar studies, provided that personnel shall not identify, directly or indirectly, any individual patient in any report of that research, audit, or evaluation, or otherwise disclose patient identities in any manner." Section 5–37.3–4(b)(3), as amended by P.L.1993, ch. 281, § 1.

The order further directed that the requirements for maintaining the security of medical records, set forth in § 5–37.3–4(c), be complied with by the committee, and that "no information * * * be disclosed or revealed outside said Committee." In following this directive, the committee established a "Protocol for the Transfer of Confidential Health Care Information from the Retirement Office of the City of Providence to the Office of the City Clerk as Depository of the Committee on the Employee Retirement System" (protocol).

■ The plaintiffs questioned the council's and the committee's ability and authority to carry out the pension study. In *Betz v. Paolino*, 605 A.2d 837 (R.I.1992), this court cogently established that "[t]here is no question that the power to legislate retirement benefits is as important a legislative function as any other element of that power to be exercised by the governing body of the city," namely by the council. *Id.* at 840. Not only are the "legislative powers of the city * * * vested in * * * [the] council," Home Rule Charter, Providence, Rhode Island, art. IV, § 401 (1980), but the Providence Home Rule Charter (charter) expressly grants to "[t]he

city council or any duly authorized committee thereof" the power to investigate any city office, department or agency. Charter, art. IV, § 402. "In connection with such investigation, the city council may compel * * * the production of books, papers and other evidence," and this subpoena power "may be delegated * * * to any standing committee." *Id.* We note that the retirement board is listed in the charter index under "Departments and Other Agencies of the City," and thus rests clearly within the council's investigatory jurisdiction. Consequently, the council is duly empowered to carry out the study.

With respect to the capability of the council or of the committee to carry out a study, the committee could properly enlist the assistance of confidential advisors, as the board does in carrying out its delegated responsibilities under the charter. We are of the opinion that it would be unreasonable to surmise that any designated committee or board of elected officials would have among its members sufficient expertise to carry out its many duties. Therefore, by enlisting the assistance of consultants on a confidential basis in executive session, the committee can carry out its study.

■ In respect to plaintiffs' legitimate concerns regarding the security of their medical records, we are of the opinion that the Superior Court's order and the protocol adopted by the committee adequately safeguard the medical records from impermissible disclosure. The council and the board agree that the medical records of members of retirement systems are exempt from public disclosure under the Access to Public Records Act, even though the actual "pension records of all persons who are either current or retired members of the retirement systems * * * shall be open for public inspection." G.L.1956 (1990 Reenactment) § 38–2–2(d)(1), as amended by P.L.1991, ch. 263, § 1. In accordance with the order, the committee must review the records only during executive sessions.

The protocol requires that the city controller remove the "name, address, social security, employee and retirement numbers to beneficiaries, marital status or dependents" be-

fore sealing the records and delivering them to the city clerk during the committee's executive session. Protocol at ¶¶ 1–2. The city clerk thereafter is held "responsible for the security and maintenance of said records, as the City Clerk is responsible for all documents delivered under seal." *Id.* at ¶ 3. The plaintiffs contend that the "City Controller is not an individual recognized by the lower [c]ourt's order to review said records," a surprising comment in light of the fact that the city controller is an *ex officio* member of the board, and presumably would already have examined the records. Charter, art. IX, § 908(a)(1). The plaintiffs further argue that by permitting the committee's "counsel, the City Clerk and professionals requested by the Chairman to interpret and/or review the records * * * while the Committee convenes in Executive Session," the protocol has violated the order that "no information shall be disclosed or revealed outside said Committee." We are of the opinion that the committee has a right to counsel with whom it would maintain confidentiality under the attorney-client privilege. As noted *supra*, the committee is also entitled to retain expert advisors in a confidential relationship. Because the city clerk at times attends executive sessions of the board, the clerk would also work in a confidential relationship with the committee. The designation of the city clerk as the repository for the sealed records was appropriate, as it would be unreasonable to expect committee members to take personal custody of the sealed records.

■ We next address the council's contention in its cross-appeal that confidentiality should not be required in cases where individuals have introduced their physical or mental condition in a claim, as plaintiffs have done in their claims before the board. Although *Bartlett v. Danti,* 503 A.2d 515, 517 (R.I.1986), held that § 5–37.3–6 violated the separation of powers as provided in article 3 of the Rhode Island Constitution by exempting confidential health-care information from compulsory legal process, the exemption did

not apply in cases where "an individual introduce[d] his physical or mental condition." [1] Section 5–37.3–6(a)(2)(A). Consequently, the right to refuse to disclose the records is not granted in such circumstances. Section 5–37.3–6(a)(2)(A). *See Lewis v. Roderick,* 617 A.2d 119, 121 (R.I.1992); *State v. Boss,* 490 A.2d 34, 36 (R.I.1985). Moreover, a separate statute establishes a health care provider-patient privilege, by directing that "[i]n every legal action * * * no health care provider shall be competent to testify * * * nor shall he or she be required to produce any documentary evidence * * * about a patient." G.L.1956 (1985 Reenactment) § 9–17–24, as amended by P.L. 1989, ch. 503, § 1. Even this statute, however, contains a similar exemption to confidentiality: "[A] health care provider may be required to testify or produce documentary evidence regarding the medical condition of a patient: (1) When a patient raises his or her own medical condition in a legal action." *Id.* We are of the opinion therefore that the Superior Court justice did not err in ordering that the medical records be delivered to the committee in redacted form under § 5–37.3–4(b)(3). Furthermore, because plaintiffs have introduced their physical conditions in proceedings before the board, our interpretation of § 5–37.3–6(a)(2) signifies that the medical records need not be provided to the committee in redacted form, but may, in fact, be provided to the committee in unedited form identifying the individual plaintiffs.

We emphasize, again, that these medical records are not subject to public scrutiny, but are confidential documents. We are of the opinion that the protocol has established adequate security procedures for limiting access to the medical records, and diligent adherence to the protocol by all parties can maintain the security of the records. Violators of the confidentiality that is provided under the act are subject to civil and criminal penalties, including imprisonment. Section 5–37.3–9.

---

1. In *Bartlett v. Danti,* 503 A.2d 515 (R.I.1986), we did not purport to construe the exceptions to the prohibition against compulsory process because we held that none was applicable in that controversy. *Id.* at 517 n. 2.

With this opinion we interpret G.L.1956 (1987 Reenactment) § 5–37.3–6(a)(2) as providing valid exceptions to the confidentiality provided in the act. Henceforth, this interpretation of *Bartlett* will be controlling.

For the foregoing reasons, we deny and dismiss the appeal; we affirm and modify the judgment of the Superior Court.

WEISBERGER, Acting C.J., did not participate.