STATE

v.

Ralph BYRNES et al.

No. 82–536–C.A.

Supreme Court of Rhode Island.

Feb. 14, 1983.

Dennis J. Roberts, II, Atty. Gen., John A. Murphy, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, John F. Sheehan, Peter DiBiase, Providence, for defendants.

OPINION

PER CURIAM.

This case is a sequel to *State v. Byrnes*, R.I., 433 A.2d 658 (1981), in which we af-firmed the robbery convictions of "bonded vault" defendants Ralph Byrnes, John Oui-mette, and Charles Flynn. It is now before us pursuant to G.L.1956 (1969 Reenactment) § 9–24–27 on certification from the Superi-or Court of the following questions of doubt and importance:

"1) Does § 8–2–23 of the General Laws empower the presiding justice of the Su-perior Court to appoint a three member panel of Superior Court justices (none of whom was the sentencing and still sitting justice) to decide a motion to reduce or correct a sentence filed pursuant to Rule 35 of Criminal Rules of Procedure.

"2) If the answer to question one is yes,:

a) What deliberation procedures and standards must be employed by the members of the panel such as:

1) Must the decision to deny or grant the motion be unanimous or will a ma-jority suffice?

2) If a majority is sufficient and the decision is to reduce the sentence, does the dissenting justice participate in the reduction of the sentence process?

3) What procedure does the panel fol-low if there is a considered disagree-ment as to the reduced sentence to be imposed on a defendant?"

For the reasons that follow, we answer the first question in the affirmative and respond appropriately to each of the subse-quent inquiries.

On August 6, 1981, defendants filed mo-tions in the Superior Court to reduce their life sentences pursuant to the provisions of Rule 35 of the Superior Court Rules of Criminal Procedure. The sentences had been imposed by the Presiding Justice of the Superior Court; however, he declined to hear the motions for sentence reduction, declaring himself unavailable for that pur-pose. On November 13, 1981, he appointed a three-judge panel to hear and decide the motions pursuant to the authority granted him by G.L.1956 (1969 Reenactment) § 8–2–23.

When the case was called for a hearing on the motions on November 3, 1982, the

state at first interposed but then withdrew an objection to the appointment of the three-judge panel. At that time, the defendants each waived any objections that they may have had. Thereafter, on December 8, 1982, the associate justices who composed the panel certified the questions presented above to this court regarding their authority to act on a Rule 35 motion pursuant to § 8–2–23.

▇▇▇ We begin our analysis by examining § 8–2–23, which provides:

"Any one (1) justice of the superior court shall be a quorum for all purposes, except as otherwise provided, but the court may, when so ordered by the presiding justice, be holden *for any purpose* by two (2) or more justices, to be designated as aforesaid." (Emphasis added.)

It is well settled that when a statute is unambiguous, we shall give its words their plain and obvious meaning. *In re LaFreniere,* R.I., 420 A.2d 82, 84 (1980); *Augustine v. Langlais,* 121 R.I. 802, 804, 402 A.2d 1187, 1188 (1979). In our opinion, there is no question that the language of § 8–2–23 is clear, concise, and unambiguous. Consequently, the authority of the presiding justice to designate a quorum of two or more justices "for any purpose" is proper provided that it is consistent with the constitutional provisions establishing the jurisdiction of the Superior Court. The details and extent of that jurisdiction are matters within the province of the Legislature. *Opinion to Governor,* R.I., 437 A.2d 542, 543 (1981).

Under art. X, sec. 1, of our State Constitution:

"The judicial power of this state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish."

Section 2 of that article further provides:

"The several courts shall have such jurisdiction as may from time to time be prescribed by law."

We have broadly construed the authority of the General Assembly under this article of our constitution to enact legislation dictat-ing the jurisdiction of the lower courts. The standard adopted to review such enactments was recently reiterated in *Opinion to Governor,* R.I. 437 A.2d at 543. There, in reference to the enactment of legislation governing criminal proceedings, we stated that the General Assembly, in the exercise of its constitutional authority, could neither subvert the power of the judiciary nor exercise judicial power. The latter proscription had been defined in *Opinion to Governor,* R.I., 437 A.2d at 543 (quoting *Lemoine v. Martineau,* 115 R.I. 233, 238, 342 A.2d 616, 620 (1975)), as "the *control* of a decision in a case or the *interference* with its progress, or the *alteration* of the decision once made."

▇▇▇ Measured against this standard, the appointment of a three-judge panel for "the purpose" of hearing a Rule 35 motion, we are convinced, does not breach the jurisdictional parameters of the court. It cannot be said that § 8–2–23, when employed for this purpose, impermissibly controls, alters, or interferes with "decisions" because it is not directed at any particular case. Furthermore, far from subverting the judiciary's power, the statute enhances it by investing the presiding justice with the authority to exercise the court's power in a collective manner.

In the context of the questions certified to us, we must also consider whether or not a defendant's constitutional rights would be impaired by having a three-judge panel hear the motion for a reduction of sentence.

▇▇▇ Our Rule 35, which is substantially similar to its federal counterpart, speaks to three distinct matters. It provides procedures for correction of an illegal sentence or a sentence imposed in an illegal manner, and it authorizes the court to reduce a lawful sentence. A motion for a reduction of sentence is essentially a plea for leniency which must be undertaken within a statutory time frame. It is addressed to the discretion of the court and may be granted if the court decides on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any

reason, unduly severe. *United States v. Colvin,* 644 F.2d 703, 705 (8th Cir.1981). Concerning the statutory time frame, we subscribe to the proviso that the court has the authority to consider motions to reduce after the expiration of the 120-day period provided that the motion itself had been filed within the prescribed period.[1] *See State v. Letourneau,* R.I., 446 A.2d 746, 747–48 (1982) (citing *United States v. Mendoza,* 581 F.2d 89, 90 (5th Cir.1978)).

It is significant for purposes of this review also to point out that on a motion for reduction of sentence, the sentencing court has the discretion to decide whether to hear testimony or arguments. Furthermore, the court need not state its reasons for granting or denying the motion. If the court does decide to reduce the sentence, the defendant need not be granted the right of allocution, nor need he or she even be present when the reduced sentence is imposed.[2] 3 Wright, *Federal Practice and Procedure: Criminal* § 586 at 405–07 (1982).

According to Professor Moore, the motion assumes "that the sentence is valid; the court is simply asked to reconsider its prior determination. No new facts in mitigation need be presented to the court, although such information obviously will strengthen the motion. The psychological principle upon which the motion seems to be premised is that passage of time may find the sentencing judge in a more sympathetic or receptive frame of mind." 8A Moore, *Federal Practice* ¶ 35.02 at 35–4, –5 (2d ed. 1982).

Rule 35 motions are generally heard by the sentencing judge. *See United States v. Colvin,* 644 F.2d 703 (8th Cir.1981); *United States v. Hammer,* 496 F.2d 917 (5th Cir.1974); *United States v. Harper,* 460 F.2d 1024 (5th Cir.1972). However, "[nothing exists] in the laws of Rhode Island stating that the matter of sentencing is the exclusive and total province of the sentencing judge * * *." *State v. Fortes,* 114 R.I. 161, 171, 330 A.2d 404, 410 (1975). When the sentencing judge is unavailable to make such a determination, as in the instant case, a provision for an alternative tribunal serves a salutary purpose. *See United States v. Hammer, supra.* Here, a three-judge panel has merely been assigned the responsibility of discharging the obligation usually performed by the trial justice. Consequently, we find that the appointment of a three-judge panel to hear a Rule 35 motion poses no impediments to a defendant's constitutional rights.

Parenthetically, we note that the procedure under scrutiny here does not represent a novel approach to sentence review. In *State v. Clark,* Ind. No. 74–1527, a three-judge panel was similarly appointed to consider a Rule 35 request for correction of an illegal sentence.

Our first response to the second portion of the panel's inquiry is that there is no need for a unanimous decision. In

---

**1.** Our Rule 35 requires the reduction motion to be filed within 120 days of (a) the imposition of sentence by the trial justice, (b) the trial court's receipt of our mandate affirming a judgment of conviction, or (c) the trial court's receipt of a similar mandate from the United States Supreme Court.

**2.** Rule 43 of the Superior Court Rules of Criminal Procedure specifically states that a defendant's presence is not required at a hearing on a motion to reduce sentence. In *State v. Tassone,* R.I., 417 A.2d 323, 324 (1980), the defendant, convicted of conspiring to fix horse races, sought a reduction in his five-year sentence by way of postconviction relief. We ruled that the defendant could appear before the sentencing judge to list the reasons why his sentence should be reduced. Our ruling in *Tassone* was prompted by the unique situation presented by our holding in *State v. Macarelli,* 118 R.I. 693, 375 A.2d 944 (1977), in which we decided that Macarelli, a co-conspirator of Tassone's, could take advantage of a 1975 statute enacted while Macarelli's appeal was pending, which pretty well eliminated the possibility that a convicted conspirator could receive a sentence which exceeded the maximum set for the crime which was the object of the conspiracy. The 120-day period specified in Super.R.Crim.P. 35 had long expired by the time Tassone became aware of his ability to take advantage of the Legislature's beneficence.

*Domestic Safe Deposit Co. v. Hawksley,* 111 R.I. 224, 232, 301 A.2d 342, 346 (1973), it was stressed that, in the absence of some directive to the contrary, a majority of any legislative, judicial, or administrative body constitutes a quorum and has the authority to act in those matters coming within its jurisdiction. A necessary corollary to this principle is that a majority vote is sufficient for any such body to act in those matters that are within the ambit of its jurisdiction. It is our belief, however, that a panelist who might vote to deny the motion to reduce can still participate in the process by which an agreement may be reached about what constitutes an appropriate reduction of the sentences originally imposed.

 We construe that portion of the panel's final inquiry which speaks of a "considered disagreement" as meaning a situation in which there is complete disagreement among the three panelists in regard to what constitutes an appropriate sentence. In such an event, the panel would have to report its inability to reach a conclusion to the presiding justice. Thereupon, a new panel would be appointed, and the defendants could try again.

The papers in the case, with our decision certified thereon, are ordered returned to the Superior Court for further proceedings.